# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| WILLIAM RABINAK, <br><br> Plaintiff, <br><br> v. <br><br> UNITED BROTHERHOOD OF CARPENTERS PENSION FUND, <br><br> Defendant. | No. 14 CV 1904 <br><br> Judge Manish S. Shah |

## MEMORANDUM OPINION AND ORDER

William Rabinak worked for the Chicago Regional Council of Carpenters as a Business Representative. He received a weekly paycheck. Because he served on the Council's Executive Board, he also received a quarterly payment of $2,500. When he retired, he was entitled to a pension, paid by the United Brotherhood of Carpenters Pension Fund—the defendant here. His pension depends on how much he was making before retirement: the more he made before, the more he gets in pension payments. But not every dollar he made counts—what counts is his "Compensation," a term that is defined in the pension plan. The Fund decided that Executive Board payments were not "Compensation," and Rabinak challenges that decision.

Because the plan gives the Fund broad discretion to interpret "Compensation," and because the Fund's decision was not arbitrary or capricious, its interpretation is upheld. Accordingly, the Fund's motion for summary judgment is granted and Rabinak's is denied.

## I. Legal Standards

Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the court must construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *CTL ex rel. Trebatoski v. Ashland Sch. Dist.*, 743 F.3d 524, 528 (7th Cir. 2014).

This suit was brought under 29 U.S.C. § 1132(a)(1)(B), a provision of the Employee Retirement Income Security Act. "This provision permits a plan participant to bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Frye v. Thompson Steel Co.*, 657 F.3d 488, 492 (7th Cir. 2011) (internal marks omitted). Where an ERISA plan explicitly gives the administrator discretion to construe the plan terms and determine eligibility, courts ask only whether the administrator's decision was arbitrary or capricious. *Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013); *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).[1] Only

---

[1] Rabinak concedes that the "arbitrary or capricious" standard applies. [26] at 5, [34] at 7.

decisions that are "downright unreasonable" will be overturned. *Fischer v. Liberty Life Assur. Co.*, 576 F.3d 369, 376 (7th Cir. 2009).

## II. Facts[2]

Rabinak's pension depends on his pre-retirement "Compensation," which is defined in relevant part as follows:

> "Compensation" means all salary paid to [Mr. Rabinak] by a Local Union, Council or the United Brotherhood but shall not include overtime, or fees or expenses paid or reimbursed to [Mr. Rabinak]. If [Mr. Rabinak's] Compensation for any year includes Compensation paid in lieu of paid vacation or other paid time off not taken by [him], . . . such Compensation shall be allocated to the year in which such vacation time or other time off was permitted but not taken by [him].
>
> Compensation shall include any salary deferred as a result of a formal program adopted by [Mr. Rabinak] and his Local Union, Council, or the United Brotherhood, provided contributions are made to this Pension Fund with respect to such deferred compensation. Compensation shall not include the value of employee benefits or other non-wage payments, even if such payments are considered income for tax purposes.

PSOF ¶¶ 8–9. Rabinak received a weekly paycheck. PSOF ¶ 18. On the pay stub for that weekly payment, the text "SALAR" appears in the field named "CODE." DSOF ¶ 21. Because Rabinak served on the Council's Executive Board, he also received $2,500 each quarter. PSOF ¶ 18. Pay stubs for those quarterly payments were coded "EBOAR." DSOF ¶ 21.

---

[2] The facts are taken from the parties' Local Rule 56.1 statements. "PSOF" refers to Rabinak's statements in support of his summary-judgment motion, with the Fund's responses ([32]). "DSOF" refers to the Fund's statements in support of its cross-motion, with Rabinak's responses ([35] at 1–11). Rabinak submitted facts opposing the Fund's cross-motion ([35] at 11–12), to which the Fund responded ([37]).

3

The Fund is a "multiemployer plan," meaning it collects contributions from multiple employers and aggregates those contributions to pay benefits. DSOF ¶ 2. Before its final decision on Rabinak's pension, the Fund was made aware that Rabinak's employer had not made the contributions that would have been required if Executive Board payments were considered "Compensation." PSOF ¶¶ 25–27, 33.

Rabinak urged that Executive Board payments were "Compensation" because they were given to him for doing his job. PSOF ¶ 30. The Fund disagreed, excluding such payments from "Compensation." PSOF ¶ 31.

## III. Analysis

### A. The Fund's decision was not arbitrary or capricious.

Rabinak argues that because "Compensation" includes "all salary," and "salary" is not defined, the question is whether Executive Board payments fit within the plain and ordinary meaning of "salary." [26] at 6. Rabinak then frames the central question as: "[D]oes Mr. Rabinak's 'Compensation' include all money he was paid in return for performing his job duties as a Business Representative?" [34] at 2; *see also* [26] at 5 ("Mr. Rabinak's position in this litigation is quite straightforward: all of the money that his employer paid him in order to compensate him for performing his duties as its employee is 'Compensation.'"). But in framing the question that way, Rabinak assumes that Executive Board payments were made "in return" or "in order to compensate him" for doing his job as a Business Representative. The Fund says otherwise: they were "to reimburse fees and

4

expenses that members [of the Executive Board] incur during service [on the board]." [31] at 1.[3]

The Fund offers some evidence in support of its view that Executive Board payments are not "salary" or "Compensation." First, Rabinak's pay stubs designated his weekly pay as "SALAR," but designated Executive Board payments differently (as "EBOAR"). DSOF ¶ 21. Second, the Council (Rabinak's employer), in making its contributions to the Fund, never treated Executive Board payments as "Compensation." PSOF ¶¶ 25–27, 33. And there is no evidence that the Fund sought to collect contributions from the Council for Executive Board payments. Finally, "Mr. Rabinak [was] the first person to object to this decades-long past practice" of treating the Executive Board payments as something other than "Compensation." [30-1] at 21.

Rabinak argues that all of this is irrelevant because the Fund, not the Council, determines whether the payments are "Compensation." [34] at 6. But where a plan term is ambiguous, the administrator and a court may consider "the

---

[3] Under the "arbitrary or capricious" standard, review is limited to the administrative record. *Krolnik v. Prudential Ins. Co. of Am.*, 570 F.3d 841, 843 (7th Cir. 2009). The parties dispute whether the Council's by-laws are part of that record. Rabinak wants to rely on the by-laws to argue that his service on the Executive Board was mandatory. [26] at 11. The relevance of that is not clear. As an illustration, "Compensation" explicitly excludes the reimbursement of expenses, so travel reimbursements would not count even if travel was mandatory. Rabinak says that the fact that service was mandatory shows that the payments were "salary." [26] at 11. The Fund draws the opposite conclusion from the same fact: because service was mandatory, Rabinak's weekly paycheck compensates him for all of his work as a Business Representative and the other payments must be something else. [31] at 11. Neither argument is overly compelling (nor is either "downright unreasonable"). But whether the by-laws are in the record is immaterial because the Fund does not dispute that Rabinak's service was mandatory.

5

intent of the plan's sponsor" and "whether the claimant's interpretation results in substantial unanticipated costs to the plan." *Krawczyk v. Harnischfeger Corp.*, 41 F.3d 276, 279 (7th Cir. 1994) (considering employer's contention that it never intended to treat severance payments as salary and had never done so before). Furthermore, "[w]hen the consistent performance of parties to a contract accords with one of two alternative interpretations of the contract, that's strong evidence for that interpretation. This is a general principle of contract interpretation rather than a provision of ERISA, but it is a principle that is applied in the interpretation of ERISA plans." *Dennison v. MONY Life Ret. Income Sec. Plan for Emple.*, 710 F.3d 741, 745 (7th Cir. 2013) (citing cases); *Gallo v. Amoco Corp.*, 102 F.3d 918, 920 (7th Cir. 1996) (noting that "for as long as anyone can remember [the administrator] has not treated payments in lieu of vacation as earnings" and that "[n]o one complained about the exclusion" before the plaintiff).

While the Fund's evidence is perhaps not overwhelming, Rabinak offers little to support his view that Executive Board payments are salary, rather than reimbursements (or other excludable "non-wage payments"). He does point out that the Council sent a letter to the plan administrator, referring to Executive Board "stipends" separately from "reimbursed expenses." [30-1] at 21. Rabinak argues that the separate references demonstrate that Executive Board payments are not reimbursements. [34] at 4. But distinguishing between "stipends" and "reimbursed expenses" is consistent with the Fund's position that: (1) the stipends are to "reimburse committee members for expenses which they *may* incur during their

service to the committee"; and (2) the payments are "functionally similar to a reimbursement" but are "in the form of a stipend" because committee members are not required "to submit receipts to receive payments . . . ." [31] at 6 (emphasis added).

Rabinak also argues that Executive Board payments should count because they are not specifically excluded by the definition of "Compensation." [26] at 7. The plan defines "Compensation" generally as "all salary," notes specific inclusions (such as pay in lieu of vacation), and notes specific exclusions (such as overtime pay). PSOF ¶¶ 8–9. Rabinak's argument is that because specific exclusions are listed, and Executive Board pay is not among them, it must be included in "Compensation." [26] at 7. But if that argument has any persuasive weight, then a parallel argument—that specific *inclusions* are listed, and Executive Board pay is not among them, so it must be *excluded* from "Compensation"—cannot be "downright unreasonable." Indeed, very similar arguments have been rejected by the Courts of Appeals. *E.g.*, *Gingold v. UNUM Life Ins. Co.*, 74 Fed.Appx. 660, 663 (7th Cir. 2003) (affirming exclusion of rental income, where plan definition did not specifically exclude it); *Krawczyk*, 41 F.3d at 279 (affirming exclusion of severance payment, where plan definition did not specifically exclude it); *Shappie v. Minster Mach. Co. Restated Non-Bargaining Emples. Ret. Plan*, 492 Fed.Appx. 543, 550 (6th Cir. 2012) (affirming exclusion of housing allowance, where plan definition did not specifically exclude it).

7

Rabinak's arguments in favor of his interpretation are not unreasonable. But "it is not [a court's] function to decide whether [it] would reach the same conclusion as the administrator." *Frye*, 657 F.3d at 493 (internal marks and citations omitted). Instead, "[w]hen as in this case the plan document does not furnish the answer to the question, the answer given by the plan administrator, when the plan vests him with discretion to interpret it, will ordinarily bind the court. That is implicit in the idea of deferential review of the plan administrator's interpretation." *Gallo*, 102 F.3d at 922. The Fund's explanation that Executive Board payments function as expense reimbursements is not "downright unreasonable." Given the payments' timing (quarterly, as opposed to weekly), designation ("EBOAR," as opposed to "SALAR"), and historical treatment (neither the Council nor the Fund ever treated the payments as "Compensation," and no one before Rabinak complained), the Fund's conclusion that Executive Board payments are not "Compensation" was not arbitrary or capricious.

### B. The Fund sufficiently stated the reason for its decision.

Rabinak complains that the Fund's arguments here—that Executive Board payments were functionally reimbursements, or were excludable "non-wage payments"—were not presented in its original decision. [34] at 3. But that breaks no rule. ERISA requires that a plan administrator give "specific reasons" for denying benefit claims. 29 U.S.C. § 1133(1). The letter denying Rabinak's claim contained the following passage:

> **Specific Reason for Denial:** The stipends received from the Chicago Regional Council of Carpenters for being on the Executive

8

> Committee are not included as Compensation for purposes of calculating Final Compensation.

PSOF ¶ 32; [30-1] at 24 (emphasis in original).[4]

The Fund's reason was sufficiently stated, and there is no requirement that it be thoroughly explained. *Gallo*, 102 F.3d at 922–23. In *Gallo*, the Seventh Circuit explained that while "specific reasons" are required, the administrator is not required to give "the reasoning behind the reasons" or "the interpretive process that generated the reason." *Id.* As long as the specific reason given was sufficient "to enable [the plaintiff] to formulate his further challenge to the denial," nothing more is required. *Id.* In other words, "[a]ll [the administrator] has to give the applicant is the reason for the denial of benefits; [it] does not have to explain to him why it is a good reason." *Id.* If challenged in court, the administrator can offer more thorough reasoning:

> When challenged in court, the plan administrator can defend his interpretation with any arguments that bear upon its rationality. He cannot augment the administrative record with new facts bearing upon the application for benefits (for example, new facts concerning the applicant's earnings or years of service), but he is not limited to repeating what he told the applicant.

*Id.* at 922–23 (internal citations omitted); *see also Militello v. Cent. States, Se. & Sw. Areas Pension Fund*, 360 F.3d 681, 689 (7th Cir. 2004) ("Although the letter is sparse, the Trustees were required to give only specific reasons, not the reasoning behind the reasons.") (internal marks omitted).

---

[4] Calculating "Final Compensation" is a step between "Compensation" and the final pension benefit; the details of the calculation are not relevant.

9

## C. The result is not changed by a conflict of interest.

Rabinak argues that because the Fund is responsible both for deciding the merits of benefits claims and for paying meritorious claims, it operates under a conflict of interest. [26] at 8.[5] In *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), the Supreme Court held that where "the entity that administers the plan . . . both determines whether an employee is eligible for benefits and pays benefits out of its own pocket" a conflict of interest exists. *Id*. at 108. The court wrote that "a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits; and that the significance of the factor will depend upon the circumstances of the particular case." *Id*. However, because "a conflict of interest is a given in almost all ERISA cases[,]" it is not the *existence* of a conflict of interest, "but the gravity of the conflict, as inferred from the circumstances, that is critical." *Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 364 (7th Cir. 2011) (internal marks and citations omitted).

The "decisive consideration in whether to uphold a decision that might just as well have gone the other way" is "the likelihood that the conflict of interest influenced the decision of the plan administrator[.]" *Dennison*, 710 F.3d at 747 (internal marks omitted). In other words, judicial review is "more penetrating the greater is the suspicion of partiality, less penetrating the smaller that suspicion is."

---

[5] Rabinak notes that the president of the Council is a member of the Fund's board of trustees. [26] at 8. The record reveals that a subcommittee, rather than the full board, made the decision in Rabinak's case. [30-1] at 24. There is no evidence in the record as to whether the Council's president was part of that subcommittee. *See* PSOF ¶¶ 23–24.

*Tompkins*, 712 F.3d at 1001 (internal marks omitted); *see also Raybourne v. Cigna Life Ins. Co.*, 700 F.3d 1076, 1082 (7th Cir. 2012) ("[A] conflict may carry more weight when the circumstances suggest a higher likelihood that it affected the benefits decision, as when an insurer has a history of biased claims administration.") (internal marks omitted).

Further, even where the circumstances suggest that a conflict affected the benefits decision, the administrator remains entitled to deference. *Dennison*, 710 F.3d at 747; *Black v. Long Term Disability Ins.*, 582 F.3d 738, 745 (7th Cir. 2009). But where the case is "borderline"—meaning the court faces a close call as to whether the administrator's decision was arbitrary or capricious—the likelihood that a conflict affected the decision can be a "tiebreaker." *Fischer*, 576 F.3d at 377 (citing *Glenn*, 554 U.S. at 117).

Rabinak has not suggested that the Fund "has a history of biased claims administration." *Raybourne*, 700 F.3d at 1082. Nor is this a case in which the plan administrator took inconsistent positions about the plaintiff's eligibility, changing positions whenever financially beneficial. *See Glenn*, 554 U. S. at 118; *Raybourne*, 700 F.3d at 1087. Most importantly, this is not a "borderline" case: as discussed earlier, it was not unreasonable to conclude that Executive Board payments did not qualify as "Compensation." While that was not the only permissible reasonable conclusion, it was not on the "borderline" of being arbitrary or capricious. There is thus no tie to be broken, even if the conflict of interest were of greater concern. *See,*

11

*e.g.*, *Fischer*, 576 F.3d at 377; *Jenkins v. Price Waterhouse Long Term Disability Plan*, 564 F.3d 856, 861–62 (7th Cir. 2009); *Shappie*, 492 Fed.Appx. at 552–53.

## IV. Conclusion

For the foregoing reasons, plaintiff's motion for summary judgment is denied, and defendant's motion for summary judgment is granted. The Clerk shall enter judgment in favor of the defendant and terminate this case.

ENTER:

                                                Manish S. Shah
                                                United States District Judge

Date: 3/3/15